**KEIFER, Admrx., Plaintiff-Appellant, v SCHUNEMAN, et., Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20758. Decided February 25, 1948.

424

Messrs. Cróssen & Hurd, Cleveland, for plaintiff-appellant.
A. F. Gallagher, Cleveland, for defendant-appellee, Fred Schuneman.

## OPINION

By MATTHEWS, PJ.

The plaintiff as special administratrix appointed under authority of §10509-14 GC, to collect and preserve the effects óf the decedent, filed this action to recover the amount of a deposit in the defendant South Side Savings & Loan Association to the credit of the defendant Schuneman and $700.00 held

by him, and also thirty-three shares of the common stock of the Duquesne Brewing Company, the certificate for which he held, all of which it was alleged constituted assets of the decedent's estate. An injunction was also sought.

The trial court found in favor of the plaintiff to the extent of $130.00, held by defendant Schuneman, and also held in her favor as to the Duquesne Brewing Company stock, but found against the plaintiff as to the deposit in The South Side Savings & Loan Association, and rendered judgment in accordance with its findings. The plaintiff appeals on questions of law from that judgment to this Court.

It was admitted at the trial that the decedent had owned all these items of personal property shortly before her death, and that all of them were under the control of the defendant Schuneman at her death and at the time of trial. The plaintiff having established recent ownership, that ownership would be presumed to continue until such time as it appeared from the evidence that the decedent had been divested of it by her own act or by operation of law. 17 O. Jur., 94, et seq.: 20 Am. Jur., 205, et seq. In the syllabus to Re Estate of Alphonse Wohleber, deceased, 101 A. L. R. —— (Pa.) 829, it is said:

"Ownership of personal property is presumed to continue unless a transfer by word or act is shown."

The effort of the defendant Schuneman at the trial was to prove a transfer of title by the decedent in her lifetime and by the plaintiff to disprove any such transfer.

There was introduced in evidence a document, dated December 9th, 1946, in decedent's handwriting, captioned "hear is my will." However, the decedent's signature was not attested by any witness and, of course, it could not be given effect as a will. In this document, the decedent wrote:

"Dec. 9—1946
Hear is my will
"I give my niece Amanda Homan Five Hundred dollars after I died

"I give my niece Hazel Pierona Five Hundred dollars

"I give my nephew Fred Jr. Schuneman Five Hundred dollars

"I give my sister Rosie Schuneman Five Hundred dollars for taking care of my that is wages

"I give Fred Schuneman S. R. my brotherlaw for taking care of everything 1 hundred

"I give my nephew Fred Schuneman Jr. 33 shares of common stock Duquesne Brewing Co. of Pittsburg, Pa.

"If there is anything left devied the rest to my nieces. children

ANNA MILLIMAN."

Having composed this document, the decedent placed it in an envelope, sealed it, endorsed on the back of the envelope "Rosie open this when I am dead" and then deposited it in her "strong" box, which she locked. Rosie, who was a sister of the decedent and wife of defendant Schuneman, knew nothing of this at the time and only learned of it after decedent's death. Likewise, according to the evidence, the plaintiff, who also was a sister of decedent, and the defendant, Schuneman learned for the first time of the existence of this document after decedent's death. No one other than decedent knew of its existence during her lifetime.

On December 21st, 1946, on the same day that she was taken to a hospital, where she died three days later, the decedent prepared and signed the following document:

"Dec 21—1946

"I at the hospital sick and I want to close my account will you Please give my Brotherlaw my money, Mr Fred Schuneman

Anna Milliman
Thank you."

The decedent immediately delivered this document together with her savings account book of the South Side Federal Savings & Loan Association to the defendant Schuneman, who, during decedent's lifetime, had the amount of the deposit, which was $2706.92, transferred to his credit upon the books of the South Side Federal Savings & Loan Association. He withdrew between $500.00 and $600.00, most of which he used to pay debts of the decedent. The balance remained to his credit at said savings association at the time this action was filed. The defendants were enjoined from distributing the deposit pending the action.

The defendant Schuneman claimed in his answer that the decedent had made a gift inter vivos of all this property to him.

The trial court found against the defendant as to the Duquesne Brewing Company stock and as to the money to the extent of $130.00 and rendered judgment therefor in favor of the plaintiff. The defendant did not appeal from that judgment.

As to the deposit in the South Side Federal Savings & Loan Association, the Court found that by her action on December 21st, 1946, the decedent had divested herself of the legal title and vested the title thereto in the defendant Fred Schuneman, as trustee for the donees mentioned in the writing of December 9th, 1946, captioned "hear is my will."

To determine whether the court was justified in holding that the title to this bank deposit passed to Fred Schuneman on December 21st, 1946, as trustee, it is necessary to analyze the actions and utterances of the decedent on that date to determine whether there was any such intent as found by the trial court.

The only item of evidence coming from the decedent is the written document, quoted heretofore, which she prepared and signed on that date. That instrument purports to be a direction or authorization to the bank to deliver or hand over the money to Schuneman. It is true that the word "give" is used, but reference to any standard dictionary discloses that the word has many meanings other than to make a donation, and a reference to "Words and Phrases" is sufficient to convince that its meaning is equally flexible under judicial interpretation. It is frequently used in the sense of "to deliver" or to "hand over" without any intent to transfer title. To determine its meaning in a given context the surrounding circumstances must be considered.

The evidence shows that the decedent had some sort of a stroke a year or so before her death. The plaintiff contended that her mind was affected, but whether it went to the extent of rendering her incompetent is not clear. It is clear that her speech was affected to such an extent that it was difficult at times for her to make herself understood.

On December 21st, 1946, when she delivered the writing and the savings account book to Fred Schuneman, he and his daughter were the only persons present and their testimony is substantially the same. Schuneman testified that: "I went in and she hands me the bank book with that note, and she mumbled, and went like that____"

"Q. At this particular time what impression did she leave with you when she gave you the book and that note?

"A. Just as I told you, she made that motion, and she gave me the bank book and the note. She done it three or four times. She smiled 'That's yours'. That's all I can say."

Then, on cross-examination, he testified:

"Q. A few weeks after that when she handed you the book, she could not say anything?"

"A. Absolutely not, I will be frank with you too, she could not. She was mumbling. You could get a word or two, but you couldn't understand her right."

He also testified that after he learned of the existence of the document captioned "Hear is my will" he concluded to carry out its provisions.

Schuneman's daughter testified as follows as to what was said and done when the bank book and writing were handed to Schuneman:—

"Q. Will you tell Judge Kovacky just what was said as you understood it?

"A. Well she was sitting in—should I tell him all?— She was sitting in the front room when she wrote the note, and I was sitting there, and she asked—mumbled to me to call my dad. I called dad and she handed him the note and the bank book.

"Q. What was said, if anything, between your aunt, now deceased, Anna Milliman, and your father? Did any conversation take place when she handed it to him?

"A. No, just a mumble like 'This is yours.' "

When this transaction took place, Fred Schuneman knew nothing of the existence of the document captioned "Hear is my will." His daughter who was present had never heard of it. Only the decedent knew about it and she said nothing on the subject.

Now accepting as credible the testimony as to the actions and inarticulate or semi-articulate utterances of Anna Milliman on that occasion, do they have any tendency to prove that she intended to make an immediate and irrevocable transfer of the title to the bank account to Fred Schuneman, as trustee for the benefit of those named in the document

captioned "Hear- is my will"? Certainly, she said nothing in-
dicating any such intent. Whatever else her actions and
utterances on that occasion may show, there is nothing to
indicate the creation of a trust.

It is claimed that because the decedent had stated in the
document, dated December 9th, 1946, captioned "Hear is my
will" that "I give Fred Schuneman, Sr., by brotherlaw, for
taking care of everything, 1 hundred," it can be inferred that'
what she did on December 21st, 1946, is referable to the in-
tent. As they emerge from this record, the two incidents are
completely unrelated and independent. Assuming, however,
that the trier of the facts would be justified in attributing to
the decedent the same intent on December 21st that she had
on December 9th, that would have no tendency to prove that
on December 21st she had the intent to make an immediate
and irrevocable transfer on that date because that was not
her intent on December 9th. The intent which she manifested
on December 9th was to make a will to take effect on her death
and revocable at any time during her life, and if that was her
intent on December 21st, what she did on that date would be
ineffective for failure to comply with the legal requirements in
the making of a will, just as what she did on December 9th was
ineffective.

In effect the trial court found that Schuneman was the
agent or trustee of the legatees named in the defectively
executed will, without any evidence of any such intent. In
**O'Brien v O'Brien, 112 Oh St, 202,** the court stated in the
second paragraph of the syllabus, that:

"Delivery of a paper writing, describing personal property,
and indicating an intention to give such personal property to
the alleged donee, to a third person by an alleged donor in
the presence, of the alleged donee, without any direction or
instruction from either, does not constitute a delivery to the
alleged donee."

We find no evidence to support the finding that the de-
cedent intended to transfer this bank account to Fred Schune-
man, as trustee, and that the court erred in so finding. No
other error appears in the record.

The issue was raised by the pleadings as to whether the
decedent intended by her actions and utterances on December
21st to make a gift to Fred Schuneman personally. His claim
in his answer was that the decedent had that intent and de-
livered the bank book to him in pursuance of that intent. That,
issue has not been determined by the trial court.

**430**

We are of the opinion that the record contains evidence from which conflicting inferences may be drawn as to the decedent's intent, when she delivered the bank book to Fred Schuneman. She may have intended to constitute Schuneman as her agent to receive and account to her without any intent to transfer title. On the other hand, she may have intended to give the account to him, which, of course, would effect the absolute transfer of title to him.

The decision of this issue requires a weighing of the evidence, the determination of the credibility of witnesses, and the drawing of inferences, and whether the burden of proof has been sustained, all appropriately done by the court of first instance, rather than by a reviewing court.

For these reasons, the judgment is reversed, and the cause remanded for further proceedings according to law.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion and judgment.