DECISION AND JUDGMENT ENTRY
Appellant Bobizar Popov[2] appeals from the judgment of the Lawrence County Court of Common Pleas, Probate Division, which concluded and ruled: 1) no effective inter vivos trust was established by Pavel Ivan Popov, the decedent, with appellant as trustee and the decedent's son, Ivan Popov, as beneficiary; 2) Ivan
Popov is a pretermitted heir; and, 3) Pavel Ivan Popov, prior to his death, transferred title of certain vehicles to appellant, for which appellant owed the estate $31,200. Appellant argues that these conclusions are in error. We find appellant's assignments of error to be without merit and affirm the judgment of the trial court.
STATEMENT OF THE CASE AND FACTS
A review of the record reveals the following facts relevant to this appeal.
On February 3, 1998, Pavel Ivan Popov (decedent) died. On February 5, 1998, Appellee Glenda Darlene Popov, decedent's surviving spouse, filed, in the Lawrence County Court of Common Pleas, Probate Division (Probate Court), an application for authority to administer decedent's estate. Appellee was temporarily appointed as administratrix.
At the time of decedent's death, appellee and decedent were estranged, and appellee had initiated divorce proceedings against decedent in October 1997. Appellee and decedent had been married since November 1981 with one child born issue thereof, Ivan Popov (Ivan), born March 7, 1983.
On February 20, 1998, Appellant Bobizar Popov, decedent's brother, filed an application to probate decedent's will and to administer the estate. The will, which was executed on July 16, 1980, appointed appellant as executor and devised the entire estate to appellant.
Appellee objected to the appointment of appellant as executor of decedent's estate. Appellant did likewise and objected to the appointment of appellee as administratrix.
On February 26, 1998, appellee filed in the Probate Court, a notice of afterborn heir, claiming Ivan to be a pretermitted heir. Appellee also filed a motion to abate provisions of the will so that she and Ivan could receive their corresponding shares of the estate as though decedent had died intestate. In her motion to abate provisions of the will, appellee indicated her intent to elect to take against the will.
On March 2, 1998, appellee filed her election to take against the will, and a hearing was held on the issue of whether either appellee or appellant was suitable to perform the duties of administrator of this estate. During this hearing, appellant testified that decedent had transferred certain trucks (the trucks) to appellant prior to decedent's death. According to his testimony, appellant was to receive the trucks from decedent upon completion of a contract between decedent's business and Allied Signal (the Allied Signal job). Appellant testified that he was to pay decedent approximately $30,000 for the trucks and that that money had not yet been paid to decedent or the estate.[3]
Appellant also testified regarding certain funds that had been transferred to him by decedent after the divorce proceedings between decedent and appellee had been initiated. Decedent withdrew the money from two certificates of deposit: one jointly owned by decedent and appellee, and the other jointly owned by decedent, appellee, and Ivan. Decedent then transferred the money to appellant by means of a cashier's check in the amount of $215,423.66.
On March 26, 1998, the Probate Court filed an entry accepting appellee's election to take against the will and finding that neither appellant nor appellee could serve as an unbiased and impartial fiduciary for the estate. The Probate Court proceeded to tentatively appoint an independent and disinterested administrator, Kevin Waldo (the Administrator). The Waldo appointment was objected to by appellee. The Probate Court also appointed Patricia Grubbs as Ivan's guardian ad litem.
On April 31, 1998,[4] appellant filed a motion requesting physical possession of the trucks transferred to him by decedent. Appellant claimed that the Allied Signal job was completed and the trucks should be returned to him. Appellant also claimed that the trucks were owned by him and titled in his name. In the motion, he further stated that he loaned the trucks to decedent's business.
Subsequently, appellee sought two orders from the Probate Court: one restraining appellant from attempting to take possession of the trucks; the other requiring appellant to deposit the funds he received from decedent, during the course of the divorce proceedings between appellee and decedent, into an account that could be accessed only by court order, or to post a bond guaranteeing the amount.
On May 29, 1998, the Probate Court filed a judgment entry holding that, upon consent of the parties, the Administrator was appointed and should post a bond of $200,000. The court further ordered that the funds appellant had received from decedent during the divorce proceedings, which were on deposit with a financial institution, remain so deposited and not be withdrawn or otherwise disposed of without the Probate Court's prior approval. The Probate Court did not address appellant's motion to have the trucks returned to him, except to state that the issue would be considered at a later date.
On July 1, 1998, the Administrator filed a motion with the Probate Court, seeking an order permitting him to receive from appellant the funds transferred by the decedent to appellant. The Administrator sought these funds for the purposes of depositing it in an account with proper trust documentation, designating Ivan as the beneficiary. The Administrator also moved the Probate Court for an order compelling appellee to provide a proper accounting of "any and all business transactions of the decedent or his business interests since his death." The motion further requested the Probate Court to order appellee to furnish evidence of title ownership to all items of personal property of decedent, which appellee was then using or had used since decedent's death.
On the same date, the Administrator filed a motion seeking an order requiring appellee to turn over to appellant the trucks that had been transferred by decedent to appellant prior to decedent's death and the divorce proceedings. In the motion, the Administrator opined that, should the Probate Court not order the return of the trucks to appellant, the estate should pay reasonable rental costs to appellant for the use of the trucks.[5]
On September 4, 1998, the Probate Court ordered that appellee provide money from the decedent's estate to the Administrator to enable him to pay his bond premium. Appellee was also ordered to provide the Administrator the information he requested regarding the decedent's businesses and their operation since decedent's death. The Probate Court further ordered that the money transferred by the decedent to appellant be maintained in accordance with the Probate
Court's prior orders. Finally, the Probate Court ordered that the disposition of the trucks titled in appellant's name "be left to the discretion of the Administrator."
On March 31, 1999, the Administrator filed an inventory and appraisal of decedent's estate. The appraisal valued the estate at $587,645.22.
Both appellant and appellee filed exceptions to the inventory. Appellant argued that the assets of the estate were "not correctly valued and are in some part under valued."
On the other hand, appellee presented the following exceptions to the inventory:
 1. The Administrator failed to list the vehicles which were held and owned by [decedent] at the time of his death, although they had been allegedly transferred to [appellant] or, in the alternative, the amount [appellant] testified that he had agreed to pay for said vehicles ($30,000).
 2. The Administrator failed to include in the inventory the funds removed by [decedent] and placed in the name of [appellant] for the purpose of hiding assets from the divorce of [decedent] and [appellee], being in the approximate amount of $200,000.
 3. The Administrator included an extrinsic value for the business known as P H Construction, Inc. in the amount of $300,000, which was improper and incorrect. There exists no basis for the determination of this value and this extrinsic value exceeds the value of the actual assets of the business, as the corporation should be valued according to the value of the shares of the stock which would be the value of the actual assets minus liabilities.
On December 27, 1999, the Probate Court filed an entry stating the issues remaining to be decided: 1) whether appellant owed the estate money for trucks transferred to him by decedent; 2) whether a trust to benefit Ivan was established by decedent when decedent transferred money to appellant during decedent's divorce proceedings; 3) whether the proper value of decedent's business, P H Construction, Inc., was approximately $300,000 or $100,000; and, 4) whether Ivan was a pretermitted heir.
Following extensive briefing by the parties, on March 15, 2000, the Probate Court entered its decision on the issues raised. The court held that: 1) $31,200 is due and payable from appellant to the estate, as payment for the trucks decedent had transferred to appellant prior to decedent's death; 2) no effective trust was established by decedent, for the benefit of Ivan and with appellant as trustee, regarding the $215,423.66; 3) the value of P H Construction, Inc., including equipment, is $100,500; and, 4) Ivan is a pretermitted heir.
On March 22, 2000, appellant requested that the Probate Court issue specific findings of fact and conclusions of law. The Probate Court ordered the parties to submit proposed findings of fact and conclusions of law. On May 19, 2000, the Probate Court issued its own findings of fact and conclusions of law.
Appellant timely filed a notice of appeal and presents the following assignments of error for our review.
FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN HOLDING THAT NO TRUST IN FAVOR OF IVAN POPOV WAS CREATED IN CONNECTION WITH THE MONEY TRANSFERRED BY DECEDENT TO APPELLANT BOBIZAR POPOV.
SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN HOLDING THAT IVAN POPOV WAS A PRETERMITTED HEIR FOR WHOM NO PROVISION WAS MADE.
THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN HOLDING THAT BOBIZAR POPOV MUST PAY DECEDENT'S ESTATE $30,000 FOR TRUCKS THE DECEDENT TITLED IN BOBIZAR POPOV PRIOR TO THE DEATH OF THE DECEDENT.
ANALYSIS
 I.
Appellant argues in his First Assignment of Error that the Probate Court's judgment — that decedent's transfer of funds to appellant, during the course of divorce proceedings between decedent and appellee, did not create an inter vivos trust for the benefit of Ivan with appellant as trustee — was in error. We disagree.
"A trust is a creature of equity. It arises where property is conferred upon, and accepted by, one person on the terms of holding, using, or disposing of it for the benefit of another." 91 Ohio Jurisprudence 3d (1989) 23, Trusts, Section 2. The courts have set forth the necessary elements for the creation of a trust. See In Re Estate of Hoffman (1963), 175 Ohio St. 363, 195 N.E.2d 106.
The several elements which must concur in the creation of a trust are a person competent to create it, sufficient words to establish it, a person capable of holding as trustee, a specified or ascertainable object, a definite subject, and a declaration of the terms of the trust. To constitute an express trust there must be either explicit language to that effect or circumstances which show with reasonable certainty that a trust was intended to be created. No particular form of words, however, is required to create a trust, and whether one exists is to be ascertained from the intention of the parties as manifested by the words used and the circumstances of the particular case. If it appears to be the intention of the donor, from the whole instrument creating it, or by his expressions and conduct at the time, that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to the conveyance the character of a trust; and in determining whether or not a trust has been created there must be taken into consideration the situation and relation of the parties and the character of the property and the purposes which the settlor had in view in making the declaration. It is sufficient if the language used shows that the settlor intended to create a trust, and clearly points out the property, the beneficiary and the disposition to be made of the property. Jones v. Luplow (1920), 13 Ohio App. 428, 431-32.
"A trust is never presumed or implied, as intended by the parties, unless, taking all the circumstances together, that it is the fair and reasonable interpretation of their acts and transactions." Faurot v. Neff (1876), 32 Ohio St. 44, quoting Equity Jurisprudence § 1195. A trust cannot be created, absent an intention to create a trust and a reasonably certain manifestation of that intention by the settlor. See Thompson v. Thompson (1868), 18 Ohio St. 73, 81 (stating that, in cases involving the creation of a trust, it is the intention that governs, and if the creation of a trust was not the settlor's intent, the court will not find a trust where one was not contemplated); Keifer v. Schuneman (1948),82 Ohio App. 285, 78 N.E.2d 780; Flickinger v. Saum(1884), 40 Ohio St. 591,600.
In the case sub judice, there was no formal, written instrument executed by decedent to create the alleged trust. According to the testimony presented before the Probate Court, shortly after appellee filed her divorce action against decedent, decedent withdrew $215,423.66 from certificates of deposit held jointly by himself, appellee, and Ivan. Decedent then transferred the money to appellant. Prior to decedent's death, the Lawrence County Court of Common Pleas filed an entry ordering decedent to replace the certificates of deposit, which he had withdrawn and transferred to appellant.
The only testimony concerning the alleged trust was that of appellant, which was ambiguous and evasive. Appellant essentially testified that the money was transferred to appellant for him to hold until the divorce proceedings were concluded and that the money was decedent's. It was only after appellant had testified to the foregoing, that it was suggested that decedent had transferred the money to appellant to be held in trust for Ivan. During appellant's testimony, an objection to certain questions arose, and appellant's counsel based his objections on the argument that it was his understanding that the money was for Ivan. To this argument, presented in open court, appellant responded "Exactly." Appellant then stated that, "I volunteer to transfer to Ivan, to my brother's son. And I know that's what he wants me to do."
Based on this testimony and the surrounding circumstances, it is apparent that decedent did not create an inter vivos trust for the benefit of Ivan, with appellant as trustee. The Probate Court found that there was no declaration of intent to create a trust at the time decedent transferred the $215,423.66 to appellant. A trust could not have been created without the express intent to create such a trust by the decedent. See Thompson, supra.
The Probate Court's finding that at the time decedent transferred the money to appellant decedent issued no declaration of intent to create a trust, is supported by competent, credible evidence and should not be disturbed. See C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578 (stating that judgments supported by some competent, credible evidence will not be reversed by a reviewing court); see, also, Ford v. Ford (1954), 69 Ohio Law Abs. 97, 118 N.E.2d 235.
Therefore, appellant's First Assignment of Error is OVERRULED.
 II.
In appellant's Second Assignment of Error, he argues that the trial court's judgment — that decedent's son Ivan was a pretermitted heir — was erroneous. Once again, we disagree.
The relevant statutory provision is R.C. 2107.34, which states in relevant portion:
If, after making a last will and testament, a testator has a child born alive, or adopts a child, or designates an heir in the manner provided by section 2105.15 of the Revised Code, * * * and no provision has been made in such will or by settlement for such pretermitted child or heir, or for the issue thereof, the will shall not be revoked; but unless it appears by such will that it was the intention of the testator to disinherit such pretermitted child or heir, the devises and legacies granted by such will, except those to a surviving spouse, shall be abated proportionately, or in such other manner as is necessary to give effect to the intention of the testator as shown by the will, so that such pretermitted child or heir will receive a share equal to that which such person would have been entitled to receive out of the estate if such testator had died intestate with no surviving spouse, owning only that portion of his estate not devised or bequeathed to or for the use and benefit of a surviving spouse. R.C. 2107.34.
The question presented to this Court is whether decedent made provision for Ivan through a settlement. It is undisputed that decedent's will was executed prior to Ivan's birth, that Ivan is decedent's child, and that the will lacks any provision for Ivan. The argument presented by appellant is that decedent provided for Ivan by means of the alleged inter vivos trust, which we have already discussed and was found to be nonexistent.
Since no trust was created by decedent for the benefit of Ivan and no other provision was made for him, by will or other means, Ivan was properly found to be a pretermitted heir pursuant to R.C. 2107.34.
Accordingly, appellant's Second Assignment of Error is OVERRULED.
 III.
In his final assignment of error, appellant argues that the Probate Court erred in its determination that appellant owed decedent's estate $31,200 for certain trucks and trailers whose titles were transferred to appellant prior to decedent's death. Specifically, appellant argues that the Probate Court erred by not offsetting the amount owed for the trucks by an amount equivalent to reasonable rental fees for the trucks covering the period of use by decedent's business following his death. We disagree.
We initially note that appellant has failed to present any legal argument or authority to support this assignment of error. Appellant's three-paragraph "argument" merely describes actions taken by the Administrator during the proceedings before the Probate Court in an attempt to gain possession of the trucks turned over to appellant.
The existence or validity of the agreement testified to by appellant during a hearing before the Probate Court is not at issue before this Court. The agreement, as described by appellant, was that decedent would transfer title of the vehicles to appellant, appellant was to pay for the vehicles, and appellant was to receive possession of the vehicles following the completion of the Allied Signal job.
We note that the record is ambiguous as to precisely when the Allied Signal job was completed. It is clear, however, that decedent transferred title of the vehicles to appellant. According to appellee, in her memorandum filed December 22, 1999, appellant received possession of the vehicles from the Administrator. Therefore, appellant's obligation to pay for the vehicles has matured and the Probate Court's finding that appellant owed the estate $31,200 for the vehicles is properly supported by appropriate evidence. See C.E. Morris Co., supra.
Appellant, however, argues that the trial court erred by not deducting the value of the estate's wrongful use of the trucks following decedent's death from the amount owed the estate by appellant. We find no evidence in the record to support a finding of wrongful use of the trucks by the estate. Nor do we find any evidence in the record to support a valuation of the fair rental value of the trucks for the purposes of offsetting the amount owed by appellant.
As we previously noted, the Administrator made the argument for fair rental value early on in the proceedings before the Probate Court. However, no evidence of wrongful use was presented, nor was evidence of the fair rental value of the trucks presented.[6]
Since the Probate Court's judgment, that appellant owed the estate $31,200 for the transfer of the trucks from decedent, was supported by some competent, credible evidence, we find this assignment of error to be without merit and it is OVERRULED. Accordingly, the judgment of the Lawrence County Court of Common Pleas, Probate Division, is AFFIRMED.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the LAWRENCE COUNTY COURT OF COMMON PLEAS, PROBATE DIVISION, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., and Harsha, J.: Concur in Judgment Only.
 _____________________________ David T. Evans, Judge
NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[2] Alternate spellings of appellant's name occur throughout the record. For purposes of this Decision and Judgment Entry, we have chosen the spelling that appears on the Brief of Appellant filed August 9, 2000.
[3] The titles of the trucks and trailers, which were transferred to appellant, reveal the makes of the vehicles transferred and the prices of those vehicles: 1) Kenworth, $15,200; 2) Cobra, $8,000; 3) Borco, $0; 4) Kenworth, $5,000; and, Mack, $3,000. The total of the prices reflected in the titles is $31,200, which approximates the $30,000 mentioned by appellant during his testimony.
[4] We note that there is no such date as April 31; however, this is the date the clerk file stamped on the document.
[5] The Administrator included with this motion some monetary figures provided to him by appellant, expressing fair rental value of the trucks at $4,500. No evidence to support these figures is present in the record and at no other point in the record are these figures mentioned or discussed.
[6] The seemingly arbitrary amount of $4,500 was presented in a motion by the Administrator, but no evidence, testimony, or affidavits were submitted to bolster this claim.